CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Chris Carson, Esq., SBN 280048
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer,**<br><br>          Plaintiff,<br><br>     v.<br><br>**B.R.E.I. LLC,** a California Limited Liability Company; **Buenavibra, Inc.,** a California Corporation; and Does 1-10,<br><br>          Defendants. | **Case No**. 2:18-cv-10768-CJC-MRW<br><br>**Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint**<br><br>Date:      April 15, 2019<br>Time:     9:30 a.m.<br><br>**Hon. Cormac J Carney** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

I.   Preliminary Statement ...............................................................1

II.  The First Amended Complaint is sufficiently pled .......................1

III. Defendants ignore the deferential standard given to
     pleading language and demands detailed facts that are
     not required in a first amended complaint. ................................7

IV.  There is no basis for the court to decline supplemental
     jurisdiction over the Unruh claim. ...........................................9

  A. The defendants' argument about Plaintiff's engaging in improper
     forum-shopping which presents an exceptional circumstance
     for which there are compelling reasons for declining
     jurisdiction has no legal merit.............................................. 10

  B. The federal rules of civil procedure govern the content of the First
     Amended Complaint, not the California procedural rules.. 11

  C. The sole state claim under Unruh does not substantially
     predominate over the ADA claim ........................................ 12

V.   By disparaging Mr. Langer and requiring specific
     procedural and substantive conditions to be met before
     he can file First Amended Complaint – and documenting
     the numbers of his ADA cases – the defendants seek to
     influence the court with irrelevant material........................... 15

  A. Serial Litigation is a Legitimate Method of Enforcement .......... 15

  B. The Plaintiff's "Motives" Are Irrelevant.................................... 17

Opposition to Motion to Dismiss                    Case: 2:18-cv-10768-CJC-MRW

C.  Litigation history is not a valid legal basis to challenge the plaintiff's standing or credibility or to diminish rights ........ 18

VI.   Defendants' Reliance Upon *Cuddeback* Is A Mistake. The *Cuddeback* Ruling Was On An Unopposed Motion And Is Both Replete With Error And Distinguishable ........................ 19

VII.  Conclusion ................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Antoninetti v. Chipotle Mexican Grill, Inc.,*

4

    614 F.3d 971 (9th Cir. 2010) ................................................................. 17

5

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*

6

    603 F.3d 666 (9th Cir. 2010) ..................................................................1

7

*Baker v. Palo Alto University, Inc.,*

8

      2014 WL 631452 (N.D. Cal., 2014) .................................................. 14

9

*Bell Atlantic Corp. v. Twombly,*

10

    550 US 544 (2007) ..................................................................... 7, 8

11

*Borough of W. Mifflin v. Lancaster,*

12

    45 F.3d 780 (3d Cir. 1995) ................................................................. 14

13

*Braden v. Wal–Mart Stores, Inc.,*

14

    588 F3d 585 (8th Cir. 2009) .................................................................7

15

*Burks v. Poppy Construction Co.,*

16

    57 Cal.2d 463, (1962) ........................................................................ 15

17

Cal. Dep't of Water Res. v. Powerex Corp.,

18

    533 F.3d 1087 (9th Cir. 2008) ............................................................ 10

19

*Chapman v. Pier 1 Imports (U.S.) Inc.,*

20

    631 F.3d 939 (9th Cir. 2011) ...............................................................2

21

*City of Chicago v. Int'l College of Surgeons,*

22

    522 U.S. 156 (1997) ...........................................................................9

23

*Daenzer v. Wayland Ford, Inc.,*

24

    193 F. Supp. 2d 1030 (W.D. Mich. 2002) .......................................... 14

25

*Delgado v. Orchard Supply Hardware Corp.,*

26

     826 F. Supp.2d 1208 (E.D. Cal. 2011) ............................................. 14

27

*Delgado v. Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208 (E.D.

28

    Cal. 2011) ......................................................................... 14

*Doe v. Abington Friends School,*

   480 F.3d 252 (3rd Cir. 2007) ................................................................9

*Doe v. Abington Friends School,*

   480 F.3d 252 (3rd Cir. 2007) ................................................................9

*Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.,*

   24 F.3d 1545 (9th Cir. 1994) ................................................................9

*Feezor v. Chico Lodging, LLC,*

   422 F. Supp. 2d 1179 (E.D. Cal. 2006) ...............................................18

*Gordon v. Virtumondo, Inc.,*

   575 F.3d 1040 (9th Cir. 2009) ............................................................16

*Kuba v. 1-A Agr. Ass'n,*

   387 F.3d 850 (9th Cir. 2004) ................................................................9

*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court,*

   123 Cal. App. 4th 261 (2004) ..............................................................18

*Moeller v. Taco Bell Corp.*

   816 F.Supp.2d 831 (N.D. Cal. 2011) ....................................................2

*Molski Evergreen Dynasty Corp. I,*

   500 F.3d 1047 (9th Cir. 2007) ............................................................19

*Murray v. GMAC Mortg. Corp.,*

   434 F.3d 948 (7th Cir. 2006) ..............................................................16

*Parr v. L & L Drive-Inn Restaurant,*

   96 F.Supp.2d 1065 (D. Hawaii 2000) ...........................................17, 18

*Peloza v. Capistrano Unified Sch. Dist.,*

   37 F.3d 517 (9th Cir. 1994).................................................................7

*Rosado v. Wyman,*

   397 U.S. 397 (1970) ..........................................................................13

*Schutza v. Cuddeback,*

   262 F. Supp. 3d 1025 (S.D. Cal. 2017)..........................................20, 21

Opposition to Motion to Dismiss       Case: 2:18-cv-10768-CJC-MRW

*Skaff v. Meridien North America Beverly Hills, LLC,*

 506 F.3d 832 (9th Cir. 2007) ............................................................ 8, 9

*Walker v. Carnival Cruise Lines,*

 107 F.Supp.2d 1135 (N.D. Cal. 2000) ................................................. 16

*Wilson v. Murillo*

 163 Cal.App.4th 1124 (2008) ............................................................ 19

**Statutes**

28 U.S.C. § 1367 ................................................................................ 9

28 U.S.C. § 1367(c) ........................................................................... 10

42 U.S.C. § 12183(a)(2) ...................................................................... 2

42 U.S.C. § 12188(a) .......................................................................... 2

42 U.S.C. §§ 12183(a)(2) ..................................................................... 2

Cal. Civ. Code § 55.56(e) ................................................................... 21

Cal. Gov't Code § 8299 ..................................................................... 17

v

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  Preliminary Statement

Defendants B.R.E.I. LLC and Buenavibra, Inc. move for dismissal of the First Amended Complaint on the basis that it fails to state a claim. Here, Defendants argue that the First Amended Complaint has failed to plead the particularity needed to state a claim for which relief can be granted. The Defendants are wrong. As discussed below, the First Amended Complaint contains sufficient factual allegations and Langer's pleading is sound.

## II.  The First Amended Complaint is sufficiently pled

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and give "the defendant fair notice of what the . . .  claim is and grounds upon which it rests" in compliance with Rule 8(a) of the Federal Rules of Civil Procedure. In order to determine whether a pleading contains the necessary allegations, a party must understand what constitutes a viable claim under the cause of action pled.

Here, Langer's claims are based on Title III of the ADA. To succeed on a Title III ADA architectural barrier claim, "a plaintiff must show that: (1) he is disabled . . . (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations" because of his disability.[1]  "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility

---

[1] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

Opposition to Motion to Dismiss                    Case: 2:18-cv-10768-CJC-MRW

standards."[2] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities"[3] and, where there are no alterations, "a failure to remove architectural barriers...in existing facilities...where such removal is readily achievable."[4]

Thus, the following is a simplified statement of the elements necessary for Langer to allege under this section:

A. Langer must be disabled.

B. Defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA.

C. Defendants must be responsible parties, i.e., owners, operators, lessors or lessees;

D. Defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove;

E. Langer must have actually encountered this non-removed and unlawful barrier;

F. The barrier must continue to impact Langer because either (1) he will return and face it again or (2) Langer is being deterred from returning because of his knowledge of the barrier.

As demonstrated by the table below, Langer has made all the necessary factual and legal allegations necessary to state a claim.

///

///

///

---

[2] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)
[3] 42 U.S.C. § 12183(a)(2)
[4] 42 U.S.C. § 12182(b)(2)(A)(iv)

| Element | Fact Alleged |
|---|---|
| 1. Disability | "Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California."<br><br>• (First Amended Complaint, p. ¶ 1). |
| 2. Place of Public Accommodation | "The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment."<br><br>• (First Amended Complaint, ¶ 11). |
| 3. Responsible Parties | "Defendant B.R.E.I. LLC owned the real property located at or about 6440 Franklin Avenue, Los Angeles, California, in December 2018.<br><br>Defendant B.R.E.I. LLC owns the real property located at or about 6440 Franklin Avenue, Los Angeles, California, currently.<br><br>Defendant Buenavibra, Inc. owned Solar de Cahuenga located at or about 6440 Franklin Avenue, Los Angeles, California, in December 2018. |

3

| | |
|---|---|
| | Defendant Buenavibra, Inc. owns Solar de Cahuenga ("Restaurant") located at or about 6440 Franklin Avenue, Los Angeles, California, currently."<br>• (First Amended Complaint, ¶¶ 2-5). |
| 4. Plaintiff's Encounter with Barriers. | "Plaintiff went to the Restaurant in December 2018 with the intention to avail himself of its services, motivated in part to determine if the defendants comply with the disability access laws.<br><br>Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.<br><br>Unfortunately, even though there was parking space marked and reserved for persons with disabilities in the parking lot serving the Restaurant during Plaintiff's visit, the parking space was not van accessible.<br><br>The parking stall measured 102 inches while the access aisle measured 60 inches in width. This is not van accessible.<br><br>In addition to not having a van-accessible |

| | |
|---|---|
| | parking space for persons with disabilities, the parking space had cross slopes and running slopes that are above 2.1%.

Finally, there was no "NO PARKING" warning in the access aisle and there were ceramic planters stored in.

Currently, there are no accessible van parking spaces.

Currently, the parking stall and access aisle are not level with each other.

Currently, there is no "NO PARKING" warning in the access aisle and there are ceramic planters in it.

Plaintiff personally encountered these barriers.

This inaccessible facility denied the plaintiff full and equal access and caused him difficulty."

• (First Amended Complaint, ¶¶ 10, 12-19, 21-22) |

| 5. The Barriers are Readily Achievable to Remove | "The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.<br><br>For example, there are numerous paint/stripe companies that will come and stripe level, van-accessible parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards."<br><br>• (First Amended Complaint, ¶¶ 27-28) |
|---|---|
| 6. Plaintiff is deterred from returning. | "Plaintiff will return to the Restaurant to avail himself of its goods or services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again."<br><br>• (First Amended Complaint ¶ 31) |

6

Each of the required factual allegations have been made.  Defendants, however, argue that the court should dismiss the First Amended Complaint because Langer has not sufficiently pled an ADA/Unruh case. The Defendants are wrong.

### III.   Defendants ignore the deferential standard given to pleading language and demand detailed facts that are not required in a First Amended Complaint.

On a Motion to Dismiss under Rule 12(b)(6), the Court is required to "read the complaint charitably, to take all well-pleaded facts as true, and to assume that all general allegations embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim. *Braden v. Wal–Mart Stores, Inc.*, 588 F3d 585, 595 (8th Cir. 2009) ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice"). The Court must accept as true all material factual allegations in the complaint: "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 556 (2007) (internal quotes omitted).

Defendants' argument urge the court to reject this charitable and deferential pleading standard in favor of a hyper-critical reading. For example, although the First Amended Complaint alleges all the necessary factual and legal allegations necessary to state a claim, Defendants argue that the First Amended Complaint is deficient because Langer fails to plead with particularity needed to state a claim.

Once "sufficient factual matter, accepted as true" has been alleged to state a plausible claim, the First Amended Complaint is sufficient

7

because "the Federal Rules eliminated the cumbersome requirement that a claimant 'set out in detail the facts upon which he bases his claim.'"[5] "[C]oncerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant."[6] In *Skaff*, the Ninth Circuit was faced with a challenge to the specificity of the complaint and noted that there are plenty of discovery vehicles available to a defendant who wishes to explore the factual underpinning of a plaintiff's ADA case:

> Le Meridien could have asked Skaff formally what barriers he had encountered, where they were in the hotel, when he encountered them, what he did about it, whether any person was present when he encountered the barriers, and, for each barrier, what damages he claimed to have suffered. If Le Meridien believed that Skaff gave conclusory answers to interrogatories on this score, Le Meridien was free to move to compel more complete answers pursuant to Rule 37 in light of what is relevant during discovery under Rule 26. Le Meridien also had the option of taking Skaff's deposition pursuant to Rule 27 and inquiring on such points, testing his credibility with cross-examination. Le Meridien could also have sent requests for admission, pursuant to Rule 36, asking, for example, for conclusive admissions that Skaff had not encountered barriers not identified by him in interrogatories or deposition.

[*Skaff*, *supra*, 506 F.3d at 842.]

The *Skaff* court concluded that, "when notice of a claim is given that satisfies Rule 8, concerns about specificity in a complaint are properly addressed through discovery devices under Rules 26, 27, 33, and 36, and, if applicable, the pre-trial order entered pursuant to Rule 16."[7] Reliance upon discovery tools instead of rounds of pleadings has become the favored approach. "Rather than endless pleadings served back and forth ad infinitum . . . that had characterized common law litigation, modern

---

[5] *Twombly*, *supra*, 550 U.S. at 556.
[6] *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 842 (9th Cir. 2007)
[7] *Skaff*, *supra*, 506 F.3d at 842

Opposition to Motion to Dismiss                Case: 2:18-cv-10768-CJC-MRW

civil procedure instead relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims")[8]

## IV.  There is no basis for the court to decline supplemental jurisdiction over the Unruh claim.

Under 28 U.S.C. § 1367(a) ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."[9] In addition, "economy, convenience, fairness and comity" are to be considered in an analysis of supplemental jurisdiction.[10]

The exercise of supplemental jurisdiction is usually mandatory, unless the exercise of jurisdiction is prohibited by section 1367(b) or falls under one of the exceptions set forth in section 1367(c). "[U]nless a court properly invokes a section 1367(c) category exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction *must be asserted*."[11] Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim only if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially

---

[8] *Doe v. Abington Friends School*, 480 F.3d 252, 256 -257 (3rd Cir. 2007) (internal citations omitted)

[9] *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004)

[10] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997)

[11] *Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994), overruled on other grounds, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1093 (9th Cir. 2008).

predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[12]

In the present case, the defendants argue that the Unruh Civil Rights Act claim should be dismissed because (1) Plaintiff is forum shopping to evade state law amendments; (2) Plaintiff's attempt to circumvent California's effort to curb abuse of its unique remedies creates a compelling reason to deny supplemental jurisdiction; and (3) Plaintiff's state law claim predominates because it provides all the remedies Plaintiff seeks.  These arguments border on the specious and cannot withstand scrutiny. Plaintiff will discuss each.

**A.   The defendants' argument about Plaintiff's engaging in improper forum-shopping which presents an exceptional circumstance for which there are compelling reasons for declining jurisdiction has no legal merit**

The defendants provide a discussion about why they believe California's procedural requirements for high-frequency litigants are better suited for Mr. Langer and he is, therefore, trying to evade those procedures by filing in federal court. This argument lacks any legal merit. First, there are numerous reasons why the federal forum is superior to the state court forum for prosecuting ADA/Unruh claims that have nothing to do with procedure. The quality of the judges, the quality of the legal rulings, the ease of the ECF system for filing and case access, the fact that the vast majority of published authorities arise within the federal forum, and the fact that the substantive law in this case is entirely federal are all reasons why an ADA practitioner would (and virtually all do) prefer federal court over state court for prosecuting ADA/Unruh claims. But, more

---

[12] *Id.*, *citing* 28 U.S.C. § 1367(c).

importantly, plaintiffs have the right to choose among appropriate forums and there is nothing improper about considering the fact that the federal forum has a more efficient and less cumbersome procedural rules. Even if the sole reason that Mr. Langer chose the federal forum over the state forum had to do with procedural rules, this would neither be improper nor a basis for this Court to decline to exercise supplemental jurisdiction.

### B. The federal rules of civil procedure govern the content of the First Amended Complaint, not the California procedural rules

The defendants argue that the First Amended Complaint is subject to stringent pleading requirements under California Code of Civil Procedure § 425.50 because Plaintiff and counsel are high-frequency filers. The defense construes the section 425.50 of the California Code of Civil Procedure as requiring a more particular explanation of how the barriers denied Mr. Langer full and equal use or access that what is currently alleged in the First Amended Complaint.  Not only is this untrue, it is irrelevant.

Mr. Langer was *not required* to meet the CCP 425.50 pleading standard because his First Amended Complaint has been filed in federal court. "[S]tate pleading standards do not apply in federal court. Where state law directly conflicts with applicable provisions of the Federal Rules of Civil Procedure, federal courts must apply the Federal Rules—not state law. Here, the provisions of Cal. Code Civ. Proc. § 425.50 conflict with Federal Rule of Civil Procedure 8(a)(2), which only requires a short plain statement of the claim showing that the pleader is entitled to relief."[13] Or consider another court's recitation of the issue:

---

[13] *Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477-78 (S.D. Cal. 2012)

Opposition to Motion to Dismiss                    Case: 2:18-cv-10768-CJC-MRW

1
2
3
4
5
6
7

Rule 8(a)(2) of the FRCP requires only a short plain statement of the claim showing that the pleader is entitled to relief.  Accordingly, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law. Therefore, the requirements of CCP section 425.50 do not govern Plaintiff's complaint in federal court ...

8
9

[*Anglin v. Bakersfield Prosthetics & Orthotics Ctr. Inc.*, 2013 WL 6858444, \*6 (E.D. Cal. 2013).]

10
11
12
13

This is a classic *Erie v. Tompkins* analysis. This court does not lack jurisdiction because of some perceived failure to comply with California's procedural pleading rules.

14
15
16
17
18
19
20
21
22
23
24

Although Langer's Unruh claim arises under state law, the allegations are subject to the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[T]he Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.' "); *see also Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1022 (N.D. Cal. 2012) (applying federal rules of civil procedure in evaluating a motion to dismiss a disability discrimination complaint); *Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477 (S.D. Cal. 2012) (noting that the provisions of Cal. Code Civ. Proc. § 425.50 conflict with Federal Rule of Civil Procedure 8(a)(2) and applying the Federal Rules).

25
26

### C.   The sole state claim under Unruh does not substantially predominate over the ADA claim

27
28

The defendants argues that the Unruh claim substantially predominates over the federal ADA claim but provides no justification for

12

this claim other than to note that under the Unruh Act, a plaintiff can also recover a modest statutory penalty. The fact that the Unruh Act provides for an additional remedy does not rise to the level of substantial predominance.

The "justification" underlying the decision whether to maintain supplemental jurisdiction or dismiss claims, "lies in considerations of judicial economy, convenience and fairness to litigants . . . ."[14] In fact, the courts have recognized that judicial economy is the "*essential policy* behind the modern doctrine of pendent jurisdiction . . . ."[15]  Here, if this Court were to decline to exercise supplemental jurisdiction over the state claim, it would result in Mr. Langer pursuing the Unruh claim in state court while, simultaneously, prosecuting his ADA claim in federal court[16]. Given that the state claim is entirely predicated upon a finding that the ADA has been violated, this means that almost identical cases would be prosecuted in two different forums.

As one Court presiding over an ADA/Unruh case recently noted, "Forcing these parties to litigate two nearly-identical cases in separate venues—one here and one in state court—is neither convenient, economical, nor fair."[17] Likewise, the *Delgado* reasoned:

> Here, the claims arise from a common nucleus of operative facts. Both the federal and state law claims are based upon architectural barriers which infringe upon the accessibility to the OSH Store. Accordingly, this Court has supplemental jurisdiction over the state law claims. The Court will exercise supplemental jurisdiction over the state law claims. Here, the

---

[14] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

[15] *Id.* (emphasis added), citing *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).

[16] Defendant suggests without offering any justification that the Court should also dismiss the federal claim. Defense primarily relies on *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1030 (S.D.Cal. 2017), a case handled by Plaintiff's counsel. In that Southern District case, the Court granted Defendant's unopposed Motion to Dismiss as to the state claim only. The federal claim was expressly retained.

[17] *Baker v. Palo Alto University, Inc.*, 2014 WL 631452, *2 (N.D. Cal., 2014)

13

state issues are not unsettled or novel and complex. Plaintiff's state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed. If this court forced plaintiff to pursue his state law claims in state court, the result would be two highly duplicative trials, constituting an unnecessary expenditure of plaintiff's, defendant's, and the two courts' resources. As a practical matter, plaintiff's state law claims for damages may be the driving force behind this action. To rule as OSH proposes, however, would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act.

[*Delgado v. Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011).]

And the many other published authorities have reached the same conclusion. Consider:

- *Kohler v. Rednap, Inc.*, *supra*, 794 F. Supp. 2d at 1096 (finding that fairness favored litigating the state claims in federal court "rather than in a separate, and largely redundant, state-court suit.");

- *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D. Mich. 2002) (supplemental jurisdiction should be exercised where "declining jurisdiction would simply require twice the expenditure of resources as to the evidentiary determinations.");

- *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995) (supplemental jurisdiction should be exercised to avoid "two parallel proceedings, one in federal court and one in the state system.")

In fact, in *Gibbs*, the Court noted that *even in circumstances where the federal claim has been lost*, the Court may want to maintain supplemental jurisdiction where the state claim is so closely intertwined with the federal claims: "There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong."[18]

---

[18] *Gibbs*, *supra*, 383 U.S. at 727.

Opposition to Motion to Dismiss      Case: 2:18-cv-10768-CJC-MRW

Additionally, because the plaintiff would not only be seeking the same determination from both courts, i.e., whether the ADA was violated, but also seeking the same injunction from both Courts,[19] this creates a risk of inconsistent orders and duplicative or conflicting remedies.  This is yet another reason why it would do violence to the principles of fairness and judicial economy to dismiss the state claims while the federal claim is still viable.

**V.  By disparaging Mr. Langer and requiring specific procedural and substantive conditions to be met before he can file First Amended Complaint – and noting the numbers of his ADA cases – the defendants seek to influence the court with irrelevant material**

In its motion to dismiss, the defense notes Mr. Langer's litigation history in an attempt to disparage his motives and, therefore, to suggest a lack of integrity with respect to the substantive claims of his case. "These arguments are representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly every case brought to enforce the right to equal access guaranteed by the ADA and California statutes."[20]  Aside from the fact that disparaging comments of this sort are unprofessional and unworthy of court proceedings, they have no relevance.

**A.  Serial Litigation is a Legitimate Method of Enforcement**

Serial litigation, *i.e.*, multiple lawsuits brought by a single plaintiff, is a legitimate method of enforcing the law. The courts that have seriously grappled with the issue have concluded that there is nothing inherently wrong with serial litigation and, in fact, it serves a public good. Citing to

---

[19] The plaintiff's complaint seeks injunctive relief under both the ADA and the Unruh Civil Rights Act. *See* First Amended Complaint, Prayer 1.

[20] *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 958 (C.D. Cal. 2009).

15

Supreme Court precedence, one federal court noted, "successful ADA plaintiffs confer a tremendous benefit upon our society at large in addition to the attainment of redress for their personal individual injuries...the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law."[21]

The Ninth Circuit noted that "the term *professional* as in *professional plaintiff* is not a *dirty word* and should not itself undermine one's ability to seek redress for injuries suffered."[22]   The *Gordon* court was quoting the court in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) where the plaintiffs had brought more than 50 cases under the FRCA and were "big time" litigants but the appellate court rejected criticisms of this fact and stated "what the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise."

"Civil rights law depends heavily on private enforcement."[23] In fact, private serial litigation is the cornerstone of ADA enforcement. The Ninth Circuit has acknowledged – in multiple published opinions – that most ADA lawsuits are brought by a small number of private plaintiffs who view themselves as champions of the disabled, and "for the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serials litigation advancing the time when public accommodations will be compliant with the ADA."[24]

---

[21] *Walker v. Carnival Cruise Lines*, 107 F.Supp.2d 1135, 1143 (N.D. Cal. 2000) (the "benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of private attorneys general who seek to vindicate a policy of the highest priority.").

[22] *Gordon v. Virtumondo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) (quote marks in original switched to italics for readability and internal cites omitted).

[23] *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000).

[24] *See*, e.g. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971, 980 (9th Cir. 2010)

Not only has the Ninth Circuit – quoting the Department of Justice – noted that private litigants are essential for enforcement of the ADA, but the California Legislature feels the same way. When California recently passed the Construction-Related Accessibility Standards Compliance Act, it specifically found that despite the passage of the ADA and the 1992 amendments to the Unruh Act "persons with disabilities are still being denied full and equal access to public facilities in many instances."[25] The final Senate analysis of S.B. 1608 further noted that "there is so little, if any, public prosecution of access violations, that thus private enforcement efforts are central to the means by which these laws, like other civil rights laws, are designed to be enforced."[26]

### B.  The Plaintiff's "Motives" Are Irrelevant

The implied argument is that the plaintiff is actively engaged in serial litigation to line his own pockets with the statutory penalties available under the Unruh Civil Rights Act and, therefore, his claims should be looked at with skepticism. This argument should be rejected for several reasons. First, of course a serial litigator is motivated by the right to recover statutory penalties. That is the *very purpose* of statutory penalties:

> It is apparent from this legislative history that section 52 has at least two important non-punitive purposes. The first is simply to provide increased compensation to the plaintiff. The second purpose, and perhaps the more important one, is *to encourage private parties* to seek redress through the civil justice system by *making it more economically attractive for them to sue.*
>
> [*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court*, 123 Cal. App. 4th 261, 270-71 (2004) (emphasis added).]

---

[25] Cal. Gov't Code § 8299.

[26] S. B. 1608 Senate Bill Analysis at 4 (Aug. 28, 2008).

"Moreover, the inclusion of penalties and damages is the driving force that facilitates voluntary compliance with the ADA."[27] Thus, the fact that the Mr. Langer may be motivated by the right to recover statutory penalties is not an *abuse* of the law; it is the intended function of the law.

The court in *Feezor v. Chico Lodging, LLC*, 422 F. Supp. 2d 1179, 1181 (E.D. Cal. 2006) reached the same conclusion. The court was faced with a standing challenge and an attack on the plaintiff's credibility because the plaintiff had filed numerous other cases. The Court rejected the implication and stated, "The fact that plaintiff is fulfilling the Congressional purpose when it provided for private enforcement of the ADA is hardly evidence of bad faith."

## C. Litigation history is not a valid legal basis to challenge the plaintiff's standing or credibility or to diminish rights

It is, perhaps, understandable to have a knee-jerk reaction that would lead one to suspect inappropriate behavior by a plaintiff filing an avalanche of lawsuits. But this initial concern cannot withstand serious scrutiny given the fact that these businesses are *actually in violation* of the law. The number of disability access lawsuits filed by an individual plaintiff is not evidence of abuse. The *Wilson v. Murillo* holding on this issue is applicable in the present case:

> While Wilson obviously views himself as a champion of the disabled, he is condemned by Murillo as a serial litigant who exploits the ADA by filing lawsuits with "a clear intent to harass businesses and extort quick cash settlements...." Wilson does not dispute that he has filed many ADA access lawsuits. Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. One court has examined the contents of Wilson's filings and has made an express finding that his ADA claims are not frivolous and that he is not a vexatious litigant. "From all that appears, the number of lawsuits [Wilson] has filed does not reflect that he

---

[27] *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000).

is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law." (*Wilson v. Pier I Imports (US), Inc.* (E.D.Cal.2006) 411 F.Supp.2d 1196, 1200.) This difference in points of view being noted, we emphasize that Wilson's **litigation history is immaterial to our resolution of this case**.

[*Wilson v. Murillo* 163 Cal.App.4th 1124, 1128, fn. 3 (2008).]

The "simple fact that a plaintiff has filed a large number of complaints" or the "textual and factual similarity of a plaintiff's complaints" is "not a basis" for finding that the plaintiff is involved in improper or vexatious litigation.[28]

In summary, it is clear that a history of bringing meritorious ADA claims cannot be used to diminish rights or as a basis for arguing that the court lacks jurisdiction.

## VI. Defendants' Reliance Upon *Cuddeback* Is A Mistake. The *Cuddeback* Ruling Was On An Unopposed Motion And Is Both Replete With Error And Distinguishable

Defendants cites to the *Cuddeback* case where the court declined to exercise supplemental jurisdiction over the Unruh claim. But the *Cuddeback* case is distinguishable and riddled with error. First, the court ruled on an *unopposed motion*.[29] The defense moved the court to dismiss the Unruh claim only (not exercise supplemental jurisdiction), and the Plaintiff *did not oppose* sending the Unruh claim to state court *in that case*. It was odd, therefore, that the court went on to "rule on the merits" in that matter. Without the benefit of briefing from the opposing counsel, the court risked making a mistake. And the *Cuddeback* court made a whopper of a mistake in its analysis.

---

[28] *Molski Evergreen Dynasty Corp. I*, 500 F.3d 1047, 1061 (9th Cir. 2007).
[29] *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1027 (S.D. Cal. 2017)

19

The *Cuddeback* court found that there were "two main reasons" for declining supplemental jurisdiction over the Unruh claim.[30] The first reason cited by *Cuddeback* was erroneous. The *Cuddeback* court noted that the plaintiff had identified nine barriers in the complaint and, therefore, concluded: "These nine allegations, if proven, would entitle Plaintiff to a minimum monetary award of $36,000. In contrast, under the ADA, Plaintiff would only be entitled to injunctive relief. Thus, under the circumstances presented, the Court finds that the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief." [31]

*Cuddeback* was flat-out wrong in this analysis. An Unruh plaintiff cannot recover multiple penalties merely because there are multiple barriers. The statute is quite clear: "Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion that the plaintiff was denied full and equal access, ***and not upon the number of violations*** of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred."[32]

The second reason relied upon by the *Cuddeback* was that the plaintiff had a stand-alone Unruh claim and, therefore, needed to prove *intentional* conduct. "Plaintiff places intentionality at the heart of his claims for relief . . . resolving the issue of intentional discrimination entails application of state-law standards . . . bolster[ing] the conclusion that his Unruh Act claim substantially predominates over his ADA claim."[33]  In the present case, however, Mr. Langer does not have a stand-alone Unruh claim. Mr.

---

[30] *Cuddeback*, *supra*, at 1029.
[31] *Cuddeback*, *supra*, at 1029-30.
[32] Cal. Civ. Code § 55.56(e)
[33] *Cuddeback*, *supra*, at 1030.

Langer's Unruh claim is predicated upon the ADA: "The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f)."[34]

## VII. Conclusion

Langer respectfully requests this Court deny the defense motion and permit this case to proceed past the pleadings stage. The First Amended Complaint give Defendants fair notice of Langer's claims and has adequate factual and legal allegations.

Dated: March 25, 2019        CENTER FOR DISABILITY ACCESS

By:   /s/ Chris Carson
CHRIS CARSON
Attorneys for Plaintiff

---

[34] First Amended Complaint, ¶ 47.